## PHIPPS v. UNION MUT. INS. CO.

No. 4238.   Opinion Filed July 20, 1915.

(150 Pac. 1083.)

1. **INSURANCE—Authority of "Soliciting Agent."** Ordinarily a mere "soliciting agent" for an insurance company—that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection—has no power to bind the company to a contract of insurance; nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein.

2. **SAME.** Such soliciting agent, however, can bind his company with regard to matters within the limited and restricted scope of his authority; that is to say, in matters pertaining to the taking and preparation of the applications for insurance, for submission to the company.

3. **INSURANCE—Hail Insurance—Fraud of Soliciting Agent—Action on Note.** An agent, soliciting for a hail insurance company, agreed verbally with a proposed applicant that he should have until April 23d within which time he might cancel the proposed insurance and have a return of his premium note, and such agent was infrusted by the applicant to fill out the application and so state the conditions in it, and the agent filled out the part of such application blank (receipt and memorandum) which goes to the applicant, correctly showing a right to cancel by April 23d, but failed, through either inadvertence or fraud, to fill out the application proper, so as to allow cancellation by April 23d, but, upon the contrary, inserted April 1st. **Held,** that in such a suit on the premium note, it was competent for the defendant (plaintiff in error) to prove the above facts and introduce the receipt and memorandum, and to show, if he could, a cancellation of the policy before April 23d, in which event he would be discharged from the payment of the note. **Held,** further, that in refusing this testimony, under defendant's second defense, the court committed reversible error.

(Syllabus by Brewer, C.)

*Error from County Court, Noble County;*
*L. B. Robinson, Judge.*

Action by the Union Mutual Insurance Company against Olony Phipps. Judgment for plaintiff, and de-

fendant brings error.   Reversed and remanded on re-
hearing.

*Henry S. Johnston,* for plaintiff in error.

*Wilson & Scott,* for defendant in error.

Opinion by BREWER, C.   This is a suit on a prom-
issory note, given by plaintiff in error in payment for
three policies of insurance, insuring certain crops of
grain against damage by hail, etc.   The three policies of
insurance were based upon three separate applications in
writing therefor, signed by plaintiff in error, who will
hereafter be referred to as defendant.   The cause was
tried to a jury in the county court, and at the conclusion
of the evidence the court instructed the jury to return a
verdict in favor of the insurance company, and entered
judgment accordingly, to reverse which judgment this
appeal is prosecuted.

Several defenses were set up, some of which went
out on demurrer, and need not be stated; but it appears
that the defense finally relied upon was that of the can-
cellation of the policies by the defendant within, as he
claimed in his answer, the time allowed him in which he
could do so at the time of making the applications for
the insurance.   The application was on a regular printed
form, furnished its agent by the insurance company,
which he was to use in taking applications for insur-
ance, and it contained provis'ons, or rather instruc-
tions, to the agent with regard to the manner of filling
out and preparing the same.   It contained numerous in-
terrogatories to be answered by the applicant, together
with a description of his crops and lands upon which
they were situated, the property he owned, with blank
plats, which were to be filled out or marked, as showing

the identical location of the property, etc., the last clause of same providing as follows:

"In case of failure of crops, necessitating replanting, or for any other cause, deemed good and sufficient to the company, this policy will be canceled without charge, and notes or cash returned; provided, a request of the owner in writing by registered mail, is received at the company's office prior to April 1st of current year."

This clause is followed by another, and then a date line in blank, and also a blank line for the signature of the applicant. Then on the same paper follows a heavy perforated line, below which is printed a form of receipt and memorandum to be detached and given to the applicant, and which, in the present case, it is alleged in the answer was as follows:

"Red Rock. March 7, 1911. Received of Olony Phipps $153.75 (cash notes) for premium on $3,075 hail insurance. L. O. Lumpkin, Agent. In case policy is not received within ten days, register a letter to the Union Mutual Insurance Company, Enid, Oklahoma. Mention agent's name. Subject to cancellation on or before the 23d of April, 1911."

It was shown at the trial that the defendant undertook, by notice sent by registered mail, on the 7th day of April, 1911, to cancel the policies of insurance, and to demand the return of the note in suit here. The policies of insurance finally issued in the matter are not brought into this case. We have only the applications and the note based thereon. If the applications had contained the right to cancel up to April 23d, as the part of the same document detached and given to the applicant clearly stated he might do, then of course his cancellation on April 7th was timely, and would have entitled

him to a return of the note. But the application did not so state. It limits the right to cancel to April 1st, in contradiction of the memoranda of the contract given defendant.

At a trial it was shown that the agent of the company, who was intrusted with its blank forms of applications, and of receipts, as stated, and with the right to take notes for premiums, and send them, along with the application, to the company, was likewise intrusted by the applicant to prepare and fill out the applications for him, and such agent filled out and delivered to the applicant the receipt, showing the date within which he might cancel and have the right to the return of the note. At the trial, the court refused to permit the defendant to introduce the receipt, and to make any proof of what occurred between him and the agent of the company in procuring the application. This action of the court is assigned as error; and upon mature consideration, we believe the point to be well taken.

The agent was nothing more than a soliciting agent; and we are well aware that such an agent—that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection—has no power to bind the company in a contract of insurance, nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein, as has been held in numerous cases in this court. *Dorman v. Conn. Fire Ins. Co.*, 41 Okla. 509, 139 Pac. 262, 51 L. R. A. (N. S.) 873; *Shawnee Mut. Fire Ins. Co. v. McClure*, 39 Okla. 535, 135 Pac. 1150, 49 L. R. A. (N. S.) 1054; *Merchants' & Planters' Ins. Co. v. Marsh*, 34 Okla. 453, 125 Pac. 1100. But we think it is equally well settled

that even a mere soliciting agent may bind the company as to matters within the scope of his authority. In the Marsh Case, *supra*, this phase of the power of an agent was not overlooked. It was there said:

"We are aware that there is much conflict in the authorities regarding the power of such agents, relative to questions of waiver, where they arise or grow out of the taking of the application; such, for instance, as misstatements made in the application, when written out by the agent for the insured, etc., many cases holding the company liable upon the ground that the taking of the application, and matters done by him in connection therewith, are within his power."

In the case of *Stone v. Hawkeye Ins. Co.*, 68 Iowa. 737, 28 N. W. 47, 56 Am. Rep. 870, in discussing the power of such an agent, the court says:

"He was empowered by it to prepare such applications for persons desiring insurance, and to forward the same to it. He wrote the application in question in the performance of the duties of his agency; and, if the company was deceived or misled by the statement in the application that the building was insured, this was in consequence of the negligent or wrongful manner in which he performed the duties of his employment, and it is consistent with justice, as well as the settled principles of the law, that the consequence of his wrong should be visited upon his principal rather than upon plaintiff, who was guilty of no bad faith in the transacaction. Wood, Ins., sec. 384; *Malleable Iron Works v. Phoenix Ins. Co.*, 25 Conn. 465. It makes no difference, we think, that plaintiff agreed that the representations in the application should be regarded as warranties by him. He consented to that agreement in the belief that the agent had written down in the application the very statement he had made. As the agent was empowered by the company to take the statement, and acted under

that authority when he wrote it, plaintiff was not charged with the duty of seeing to it that it was correctly taken. He had the right to assume that this was done. It would be manifestly unjust to hold that he was bound absolutely by a statement which was wrongfully interpolated into the application by defendant, and which he did not know was there when he consented to the agreement."

In the case referred to in the above quotation (*Malleable Iron Works v. Phoenix Ins. Co.*, 25 Conn. 465), it is said in the head-notes:

"An agent of an insurance company authorized to procure applications for insurance, and furnished by the company with printed blanks therefor, containing interrogatories, to be answered by the applicant, with regard to the condition of the property to be insured, has, as incidental to such power, authority to make all necessary explanations of the meaning and effect of the terms employed by the company in their interrogatories, and to agree with the applicant as to the terms which he shall employ, to express the facts stated by him in answer to the interrogatories. Therefore, where such an agent, at the request of an applicant from whom he had solicited proposals for insurance, read to him the interrogatories and wrote in the application his answers, and, while doing so, the question occurring, 'Is a watch kept on the premises during the night?' the applicant answered, 'No,' and then stated certain facts with regard to the employment of a man during part of the night, for most of the time, at an adjacent shop within the same inclosure, who would be likely to see if anything was wrong about the premises, upon which the agent remarked that he should consider the man to be a watchman till 12 o'clock, and the applicant remarking that he did not know how it would be considered, but would leave it to him, the agent wrote as the answer, 'Watchman till 12 o'clock,' which application was forwarded to the insurance company by the agent without explanation, and a policy issued upon it,

the company receiving no notice until after the insured property was burned that the fact was not as stated in the application, and the insured not knowing until then that the answer was objectionable, on a petition in chancery to procure the correction of the application in the above statement, and praying that the insurance company be ordered to pay the amount of the loss, it was held that the relief prayed for ought to be granted."

In speaking of the question of agency in general, and soliciting agents for insurance companies in particular, the author of Ostrander on Fire Insurance, section 34, p. 131. observes:

"It is important that we note carefully the distinction which is recognized by the law of agency between unrestricted power and unrestricted power concerning a particular matter. The agent's authority may be plenary in regard to the one or more things to which it relates, having beyond that no elasticity, or capability of extension. When the powers of the agent are not particularly defined and limited, they will be presumed to be plenary in respect to the matters to which his appointment relates. The agent who has only authority to solicit risks and take applications, acting within the narrow range of his duties, without the power to make a completed contract, represents his company, to all intents and purposes, in regard to such things as he has been appointed to perform. The solicitor is, within the limit indicated, an authoritative, and often the only visible, representative of the company, whose office is frequently too remote to have any knowledge of the facts and circumstances which any particular case presents."

And on page 132 that author continues his remarks as follows:

"The agent appointed to solicit insurance and take applications will bind his company, when acting within the scope of his authority, as firmly as could the presi-

dent of the company acting in the same relation. His knowledge in respect to any material fact affecting the condition or character of the risk is imputed to the company employing him, and will create an estoppel as to defenses that would otherwise be available under the policy. But when the contract is completed, and the policy delivered, the soliciting agent has no further authority in regard to the matter. Whatever may be subsequently said or done by him will, in no manner, change the relation of the parties. He has no power to increase or lesson the existing obligation."

As somewhat related in principle, see *Summers v. Alexander*, 30 Okla. 198, 120 Pac. 601, 38 L. R. A. (N. S.) 787.

So, in this case, the soliciting agent was clothed by the company with the visible power and authority, manifested through the blanks he carried and the conduct he pursued in taking applications and procuring the company to issue policies thereon, to do anything necessary in the taking of this application. He had the right to fill it out, and it was his duty to do so honestly, and just as he had agreed with the applicant to do; and, when the applicant received his part of the contract, showing that he had the right to cancel, up to a certain date, he had the right to assume that the agent had so filled in the application. Not having done so, the agent's failure must be attributed to one of two causes: (1) That of oversight; and (2) that of fraud. And, in either event, if one of the parties must suffer loss, such loss should fall on the company, whose agent, with authority in this particular matter, caused it. As above stated, we think the court committed error in refusing to allow the introduction of the receipt and the proof offered relative to

the same on this defense made against the payment of the note.

2. It is also complained by the plaintiff in error that the court committed another error in the rejection of evidence. This relates to the offer in evidence of a certain writing, which it was claimed would show that the right of the insurance company to do business in this state had been revoked by the insurance commissioner some time after the contract of insurance was entered into. We gather from the record that some kind of paper was offered in evidence under the claim that it would show this, and the court refused to permit its introduction on general grounds. The paper that was offered and refused has not been brought into the case-made, and therefore we cannot inspect it and determine whether or not it was admissible. Its rejection may have been because of want of proper execution, or it may have been because the court thought its contents inadmissible, or for other reasons; and to determine the correctness of such would require that it be brought into the record, so we could examine it as to these things. This was held in the original opinion in this case, and counsel for plaintiff in error seems considerably aggrieved and claims that it is not in the record here because the court held it out when offered in evidence. But counsel is in error. Of course it would not be brought here as evidence, but it should have been brought here to show what the proposed evidence is, where the same is in writing, as in this case. It would certainly have been very easy, in preparing the case-made, to have inserted the document that was offered in evidence, but refused by the court, and upon which the claim of error was to be predicated.

. Other points raised in the brief do not, we think, need special attention.·

We think the case should be reversed and remanded, for the reasons given in the opinion, and that a new trial be granted; that the former opinion filed herein be· withdrawn, and this one filed as the opinion of the court.

By the Court: It is so ordered.