## FIDELITY & CASUALTY CO. of N. Y. v. CURTIS BROWN CO.

No. 13037—Opinion Filed May 27, 1924.

Rehearing Denied Dec. 23, 1924.

**1. Insurance — Contract — Application — Necessity for Acceptance.**

The making of an application for insurance subject to the approval or rejection of the company to which it is made, is merely a step in the creation of a contract to insure. When the application is made out and forwarded to the company, it is not yet a contract of insurance; it has then only attained the position of a proposition on one side. It requires an acceptance by the other side before it can be said that the minds of the parties have met upon the terms of a contract to insure.

**2. Same—Construction of Policy—Intent of Parties.**

An insurance policy should be interpreted by the rules which are applicable to other written contracts to ascertain and give effect to the intentions of the parties.

**3. Same—Acceptance of Application on New Terms.**

To be effective, an acceptance of an application must be in the very terms offered. Where it is on different terms, the contract is not complete until the applicant has signified his acceptance of the new terms.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by Curtis Brown Company against the Fidelity & Casualty Company of New York. From a judgment in favor of the plaintiff, defendant brings error. Reversed.

Ross & Thurman, for plaintiff in error.

Underwood & Rodolf, for defendant in error.

Opinion by PINKHAM, C. This is a proceeding in this court to reverse a judgment rendered by the district court in and for Tulsa county, Okla., in favor of the plaintiff for $3,067.92, and costs, in an action wherein the plaintiff in error was defendant and the defendant in error was plaintiff, and in which the action was founded upon a written policy of insurance alleged to have been issued and entered into on July 25, 1919, and in which, as alleged by the plaintiff, the defendant agreed to insure the stock of merchandise belonging to the plaintiff against loss by burglary to the extent of $4,000.

The parties will be referred to as they appeared in the trial court.

The plaintiff alleged in its petition, among other things, that it was the owner of a stock of merchandise in the city of Tulsa; that on July 22, 1919, the plaintiff applied to Dickey-Ashby-Fountain Company, local agents of the defendants, for a burglary policy in the sum of $4,000, covering said stock of goods; that on July 25, 1919, in consideration of the payment by the plaintiff to the defendant of a premium of $99 the defendant, by their agents, duly authorized so to do, executed their policy of insurance in writing, which said policy was to insure the plaintiff against any loss, not to exceed $4,000, by burglary of said stock of goods; that said policy was a mercantile open stock policy; that said policy was forwarded to defendant's local agent to be delivered to the plaintiff, but that prior to the delivery of said policy to the plaintiff, and on August 2, 1919. the plaintiff's place of business was broken into and part of its stock of goods stolen; that on August 3, 1919, the plaintiff furnished the defendant with proof of loss; that the amount of the loss sustained by the plaintiff was $2,718.98, and the defendant had not paid any part thereof; and praying for judgment in the sum of $2,-718.98, with interest thereon at 6 per cent. per annum from August 3, 1919.

The defendant filed its answer in which it denied all allegations of the petition except such as were specifically admitted therein.

In substance, the defense was that a contract of insurance was never consummated by an unconditional acceptance of the plaintiff's application.

The case was tried to a jury and at the close of plaintiff's evidence the defendant demurred thereto, which demurrer was overruled, and the defendant excepted.

Thereupon the defendant introduced its evidence and rested, and the evidence having been closed the defendant requested the court to peremptorily instruct the jury to return a verdict for the defendant, which instruction was refused by the court, and the defendant excepted.

A verdict for the plaintiff resulted and upon that verdict judgment was entered against the defendant.

Motion for new trial was overruled and exception reserved. The case comes regularly on appeal to this court.

The first proposition discussed by counsel for defendant in their brief is that a contract of insurance was never consummated by an unconditional acceptance by the defendant of plaintiff's application for insurance.

The following are the facts disclosed by the record:

In July, 1919, the Dickey-Ashby-Fountain Company were engaged in the insurance business in the city of Tulsa, and for some time had been handling all insurance of various kinds and classes for the plaintiff, Curtis Brown Company, which was engaged in the mercantile business in Tulsa.

It appears that when the plaintiff company desired insurance of any kind or additional insurance it would, through its president, Curtis Brown, call the office of Dickey-Ashby-Fountain Company, by telephone. and request a specific insurance in a certain amount; that the Dickey-Ashby-Fountain Company would then use their judgment in selecting the insurance company, to which it would make application for the insurance and upon the issuance of the policy would deliver the same to the plaintiff and collect the premium.

The Dickey-Ashby-Fountain Company were soliciting agents for a number of companies, four of them being burglary companies. This company had power to receive applications and forward them to the different insurance companies or their general agents, but did not have authority to write policies or to bind the insurance company by contracting with the insured.

In the early part of July, 1919, the plaintiff carried a $2,000 open stock mercantile burglary policy issued by the defendant, the Fidelity & Casualty Company, of New York. It appears that six months prior to that time. at the suggestion of Dickey-Ashby-Fountain Company, wire mesh screens in iron rod frames had been placed over accessible entrances to the store room of the plaintiff. It further appears that on Saturday, July 21, 1919, the store of the plaintiff was burglarized with a loss of some $2,-500. This loss was paid to the full extent of the policy, which was then in existence.

After this burglary and on Monday, July 23, the president of the plaintiff company called the Dickey-Ashby-Fountain Company, by telephone and stated that he wanted a $4,000 policy. This message was received by the chief clerk for the Dickey-Ashby-Fountain Company, and this clerk informed Mr.

Brown, the president of the plaintiff company, that she would immediately make application for said policy to Oklahoma City, but that she had no authority to bind the insurance until word was received from Oklahoma City; and she thereafter made application to Upsher & Upsher, of Oklahoma City, who were the general agents for the defendant, the Fidelity & Casualty Company, for such policy in a letter dated July 23, 1919.

It further appears that on July 26, 1919, Upsher & Upsher, general agents, as stated, for the defendant insurance company, wrote from their office in Oklahoma City a letter to Dickey-Ashby-Fountain Company, enclosing a mercantile open stock policy in favor of the plaintiff company, the body of their letter being as follows:

"We herewith enclose new mercantile open stock policy duly executed in behalf of the above concern in the sum of $4,000 with the understanding that same is not to be delivered until the door has been repaired where the burglary previously occurred, and that it this time is protected with iron bars and in fact all other accessible entries with iron bars.

"Our reason for making this request is that our loss ratio in Tulsa is something appalling on burglary and while we appreciate, as you know, the business you are sending the company, we are expecting the company to quit writing burglary business in Tulsa."

It further appears that on July 28, Mr. Ashby, of Dickey-Ashby-Fountain Company, informed Mr. Brown, president of the plaintiff company, over the telephone, that his $2,000 policy had arrived; that Mr. Brown objected, saying that he had applied for a $4,000 policy.

Mr. Ashby said it would be returned to Oklahoma City and exchanged for a $4,000 policy, it being evident that a mistake had been made as to the amount of insurance desired.

In that conversation Mr. Ashby specifically informed Mr. Brown that the policy involved in this suit had been sent conditionally and read to him over the telephone the letter referred to from the general agents containing the conditions upon which the policy would be delivered.

On August 2nd, the store of the plaintiff was again burglarized, the burglars gaining entrance through the same place at which the burglars had gained entrance in the burglary of July 21st.

It is conceded that no iron bars were put on or over the door where the burglars on July 21st and August 2nd gained entrance into the store, or over any other entrance or openings, and that all of these openings were in exactly the same condition so far as iron bars or iron mesh protection is concerned as they were before the first burglary on July 21st, until after the second burglary on August 2nd.

The president of the plaintiff company testified that he had had instructions from Dickey-Ashby-Fountain Company to repair the place where the burglary had occurred, but that so far as iron screens or bars were concerned none had been put in between the time of the first and second burglaries.

On August 4, 1919, the general agents of the defendant mailed from Oklahoma City to the Dickey-Ashby-Fountain Company, at Tulsa a $4,000 burglary policy to take the place of the $2,000 policy.

This policy of insurance, the one involved in this case, was never delivered and no premium was ever paid.

Upon this state of facts upon which there is no conflict in the testimony the question arises as to whether or not this contract of insurance was ever consummated.

If there was no contract of insurance there can be no recovery in this case.

An insurance policy should be interpreted by the rules which are applicable to other written contracts to ascertain and give effect to the intentions of the parties. 14 R. C. L. 925.

It is well settled that acceptance of the application in order to be good must be of the very terms offered; otherwise no contract can result. Quincy First National Bank v. Hall, 101 U. S. 43; Stephens v. Capital Insurance Co., 87 Iowa. 283.

An application for insurance, whether or not it is accompanied by payment of the premium, amounts to but a proposal, and does not become a completed contract until it is accepted by the insurer. Until there has been an acceptance of the terms proposed, the meeting of the minds which is necessary to the contract is wanting. Shawnee Mutual Fire Ins. Co. v. McClure et al., 39 Okla. 535, 135 Pac. 1150.

"There is nothing mysterious about a contract of insurance. It requires the assent of both parties to the same thing as any other contract, and the parties thereto have the same right to prescribe their own terms

of acceptance of propositions and offers as are accorded to parties in any other contract." Stephens v. Capital Insurance Co., supra.

When the general agents of the defendant insurance company received the application of plaintiff for a $4,000 burglary policy on or about July 23, 1919, they were aware of the previous burglary of the plaintiff's store on the 21st day of July, and having paid that loss to the extent of the policy, they required as a condition precedent to the delivery of another burglary policy to the plaintiff, that the door through which the burglars had entered must be protected by iron bars, and all other accessible entries with iron bars.

That condition in writing accompanied the policy which was forwarded to the Dickey-Ashby-Fountain Company, on July 26, 1919, with directions not to deliver the policy until the conditions had been complied with.

There can be no question but that at the time of the burglary involved in this case on August 2, 1919, or on August 4, 1919, when the $4,000 policy was mailed by the general agents in Oklahoma City, or on August 5, 1919, at the time when it was received by Dickey-Ashby-Fountain Company, in Tulsa, that the plaintiff could have refused to accept the policy because the conditions attached by the general agents required it to protect the door of its store with iron bars and all other accessible entries with iron bars, and therefore was not an acceptance of its application for insurance.

And it necessarily follows that if there was no contract binding on the plaintiff to accept and pay the premium on the policy there could not be any contract of insurance binding on the defendant, in the face of the refusal of the plaintiff to comply with the conditions required by the insurance company.

"To be effective an acceptance of an application must be in the very terms offered. Where it is on different terms the contract is not complete until the applicant has signified his acceptance of the new terms." 14 R. C. L. 895, sec. 71.

It is contended by the plaintiff that admitting that the original policy which had been erroneously made in the sum of $2,000 instead of $4,000 was transmitted by the general agents of the defendant to the local agents at Tulsa to be delivered upon the adopting of certain protective measures by the plaintiff, it therefore follows that when the local agents, who were the agents for the purpose of delivering the policy and for the purpose of determining when those protective measures had been adopted, sent the policy back to the general agents for the purpose of correcting the amount alone and requesting that that amount be bound, the local agents had determined that every protective measure required by the general agents had been adopted.

This contention cannot be sustained.

In the first place, the evidence is without conflict that Dickey-Ashby-Fountain Company informed the plaintiff that the policy would not be delivered until the conditions named by the general agents of the defendant had been complied with; and the plaintiff admitted that those conditions had not been complied with.

In view of which facts it cannot, we think, be said that if a policy in the amount of $4,000 instead of $2,000 had been received by the Dickey-Ashby-Fountain Company, in the first instance, it would have been delivered to the plaintiff. The presumption is that the local agents would have obeyed the instructions of the general agents.

The general agents having named the conditions upon which this policy would be delivered, it cannot be said that the soliciting agents would have the authority to bind the insurance company in a case where it is admitted the conditions had not been complied with.

In the case of Phipps v. Union Mutual Ins. Co., 50 Okla. 135, 150 Pac. 1083, it is said:

"The agent was nothing more than a soliciting agent; and we are well aware that such an agent—that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection—has no power to bind that company in a contract of insurance, nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein, as has been held in numerous cases in this court." Citing a number of cases.

The record discloses that on August 8, 1919, the defendant insurance company sent a letter and telegram to the Dickey-Ashby-Fountain Company to "take up all burglary policy which the Fidelity & Casualty Co. has on Curtis Brown Co."

The plaintiff contends that this notice of cancellation of this policy was evidence that a contract of insurance was in existence.

We do not think this action on the part of

the defendant company has any tendency to show that there was a contract of insurance in force at the time the store of plaintiff was burglarized on August 2, 1919, and meant no more than that the policy, not having .been accepted upon the conditions upon which its delivery depended, should be cancelled. The policy had been forwarded by the general agents to Dickey-Ashby-Fountain Company to be delivered only after the conditions named by the general agents had been complied with.

Those conditions were never performed, and the minds of the parties never met with reference to the policy in question.

We have carefully examined the record in this case. There is no conflict in the testimony. Our conclusion upon the whole case is that the contract of insurance was never completed between the plaintiff and defendant; and further upon the facts presented by the record the jury should have been peremptorily instructed to find for the defendant.

We are therefore of the opinion that the cause should be reversed and remanded for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.