## AMERICAN NAT. INS. CO. v. DRIVER.
### No. 9739.

Court of Civil Appeals of Texas. Galveston.
June 17, 1932.

Rehearing Denied July 14, 1932.

Williams, Lee, Hill, Sears & Kennerly, W. H. Blades, and S. R. Fisher, all of Houston, and Frank S. Anderson, of Galveston, for appellant.

Nichols & Stodder, of Houston, for appellee.

GRAVES, J.

This concededly correct statement is taken from appellant's brief:

"This is a suit upon a policy of insurance in the amount of One Thousand Dollars ($1000.-00), issued on October 25, 1929, by the appellant, American National Insurance Company, upon the life of one John Franklin Knight. The appellee, plaintiff below, Ola Mae Driver, alleged that she was the beneficiary named in the policy, but in the alternative, in the event she was mistaken in such allegation, the original policy having been destroyed by fire, that the application for insurance named her as beneficiary, and that the appellant, American National Insurance Company, through fraud or mistake, issued a policy payable to the estate of John Franklin Knight, and that she was entitled to the benefit due, alleging that all premiums had been paid and that all conditions imposed by the policy had been fully complied with, the insured, John Franklin Knight, having died on the 1st day of May, 1930.

"The plaintiff claimed that she was entitled to double the face value of the policy, alleging that the insured, John Franklin Knight died as the result of bodily injuries inflicted through external and accidental means.

"The appellant, American National Insurance Company, answered denying in whole the allegations of the plaintiff's petition, urging that plaintiff was not entitled to maintain her suit, the policy not being payable to her.

"At the conclusion of the evidence two issues of fact were presented for the jury's determination by the Court's charge:

"1. Was the plaintiff, Ola Mae Driver, engaged to be married to the insured, John Franklin Knight, on the date of his death?

"2. Did the plaintiff, Ola Mae Driver, pay to the American National Insurance Company Twelve and 77/100 Dollars ($12.77) premium on or about February 20, 1930, or before February 25, 1931?

"Both of these questions were answered by the jury in the affirmative.

"Upon such findings alone, the Court entered judgment for the plaintiff, Ola Mae Driver, against the American National Insurance Company, for Two Thousand Dollars ($2000.00), being the amount payable in case of accidental death, together with twelve per cent (12%) interest as penalty, and One Hundred Fifty Dollars ($150.00) attorney's fees, in all a total of Two Thousand Three Hundred Ninety Dollars ($2,390.00) to bear interest at the rate of six per cent (6%) per annum, from date until paid.

"Appellant's original and amended motions for new trial being overruled, it gave notice of and in due course perfected its appeal."

In protest here against the adverse judgment so rendered below, the insurance company, through a number of propositions, renews its contention there that, the undisputed evidence having shown that the appellee was neither a party to, a beneficiary of, nor a payee named in, the contract of insurance on Knight's life as actually issued by it and delivered and accepted by the insured, she was not entitled to maintain this suit thereon, wherefore the trial court should have granted its request for a peremptory instruction in its favor, whether or not she had been so engaged to be married to him and had paid the second premium thereon before February 25, 1931.

That position is sustained, the judgment is reversed, and the cause rendered in appellant's favor.

No extended discussion of the considerations inducing this conclusion is deemed essential, as in our view the uncontroverted facts—entirely aside from the two findings of

the jury, which may be conceded to have been sufficiently supported—compel it as a matter of law.

In brief substance, they are:

Mr. Knight, on October 4 of 1929, signed in the presence of and delivered to appellant's soliciting agent a written application for the insurance under one of the company's regular forms, in which he designated the appellee by name as his beneficiary, specifying her relationship to him as "future wife" and the date of her birth as "December 20, 1909"; it was the company's custom with reference to the delivery of policies for the agent himself to deliver them to the applicants, and, in pursuance of such practice, this agent, Mr. Sollay, turned Mr. Knight's application over to the company's assistant superintendent at its Beaumont office; as to what then ensued, Mr. Sollay further testified without dispute: "I did see this application after it was turned over to the superintendent's office at Beaumont and before the policy was issued thereon, and did note changes in the application; I noticed the name 'Ola Mae Driver' was scratched out and the word 'estate' written instead. Also, I noticed that the words 'future wife' and 'December 20, 1909' were scratched out. When I discovered these changes I talked to the agent of the American National Life Insurance Company at Beaumont about it; I talked to Mr. Stover (assistant superintendent) in checking over the application, and he told me 'They won't issue this policy,' and I said 'Why?' and he said 'Because the beneficiary is not a blood relative,' is what he told me. Well, I turned and left our desk and walked over to the superintendent's office; there is a little window in there, and I called Mr. Elkat, superintendent of the office of the district up and told him, and he said 'Are those people engaged to be married?' and I said, 'He said they were.' Well, he said, 'Under those circumstances, I don't think it makes any difference'; but the policy came back issued to the estate. Mr. Knight, when he made this application, desired that Ola Mae Driver, as future wife, be made his beneficiary, and that is the reason I so inserted it in the application; and I so informed the superintendent of the defendant company when I had the discussion with him about it, as I have just related; but when I got the policy, it was made out to the estate."

As bearing upon this feature, the appellee herself testified: "The squabble between Franklin (Mr. Knight) and Mr. Sollay must have come about this way: Mr. Sollay must have told him the policy was made to the estate and Franklin told him he would not have it that way, and Mr. Sollay told him he would have it changed, that somebody in the office had scratched it out, and his agreement was that it was to be changed; Mr. Sollay would have the beneficiary changed back in the policy so that I would be the beneficiary like I originally was, like the original application called for. Mr. Sollay told me several people were in the office when my name was scratched from the original application and Franklin's estate substituted as beneficiary. I do not know what office he was referring to when he told me that, but I imagine it was the Beaumont office; I don't remember that. I do not know what the date was that Mr. Sollay had this squabble about the beneficiary in the policy."

Thereupon, as also undisputedly appears, thereby conclusively negativing the existence of any mistake on appellant's part, the policy sued upon, bearing the date of October 25 of 1929, was issued—conformably to these changes in the application so made in the company's office—payable to Mr. Knight's estate, and, on or about the 10th of December of 1929, through the same agent who had solicited it of him, Mr. Sollay, was delivered to the appellee, who then signed a receipt therefor in Mr. Knight's name and gave the agent her own check for the first quarterly premium thereon of $12.77, the amount being refunded to her by Mr. Knight two days thereafter; that Mr. Knight himself, after such delivery of the policy, both knew of and acquiesced in the fact that his estate and not the appellee had been so designated as the beneficiary, likewise appears from the testimony of Mr. Sollay and of the appellee. The former said:

"I did open the policy up and look at it to see whose it was and how it was made out, and it was then that I discovered that the 'Estate' was named as the beneficiary. When I went out to the North Dayton oil fields and by chance ran into Mr. Knight, I mentioned to him that I had his policy; I just passed by him as he was busy working on a dirt floor and I just spoke to him and said, 'Frank, I have your policy,' and he said 'All right, I will be in in a few days,' is all the remarks he made to me. When Mr. Knight made the application for insurance, he told me 'If you don't see me, just leave the policy with Ola Mae.'

"It was between the 15th and the 20th of January, 1930, that I discussed with Mr. Knight the fact that the original policy carried the name of his Estate as beneficiary, instead of Ola Mae Driver; and he was not satisfied with it just like it was, you understand; he was satisfied with the insurance and everything, but he wanted the beneficiary changed and I told him I would help him get it changed."

The latter put it this way:

"I just told Franklin the policy was there and told him to come and look at it. It was about two days after the policy was delivered to me that I told Franklin it was there.

"The first time I discovered that the estate was named beneficiary in this policy instead of myself was when Franklin came and told

me about it; I do not remember what month that was.

"I do not know whether they had any talk or negotiations about changing the policy, not of my own knowledge. So that, Mr. Knight is the one who called it to my attention before he died that the beneficiary was incorrectly stated in the policy; it was just a little after the store burned up he told me. And I have testified he did have some talk with Mr. Sollay about it."

Although this knowledge and acquiescence on the insured's part that the policy had in fact thus been made payable to his estate and so delivered to the appellee as his agent came to him more than three months before his death on May 1st of 1930—beyond his then-expressed request of Mr. Sollay to assist him in changing the beneficiary and the latter's merely getting and leaving the necessary blanks for that purpose with the appellee before January 20th of 1930, of which a few days later he told Mr. Knight, with the information that he would have to go and execute them before a notary public—by the uncontroverted further proof, no action was ever taken to effect a change in the beneficiary in the manner specified in the policy itself, which provided that "any such change shall not become operative until and unless endorsed hereon at the Company's Home Office."

It was neither alleged nor proven that any steps on the assured's part were ever taken to have these blanks properly filled out, sworn to before a notary, or transmitted to the company itself, the soliciting agent not having even pretended to bind it by simply undertaking to so furnish them; indeed, although they were thus available to him for that purpose more than three months before his death, it is neither claimed nor indicated by any evidence at all, either that he ever went any further looking toward changing the beneficiary in the policy as written, or even at any time communicated to the appellant at its home office that he desired or intended to ask a change, the information to the superintendent at Beaumont to that effect having been given by Mr. Sollay prior to its issuance.

On the coming in of these conditions, under settled rules of law, in the opinion of this court, no contract of insurance between the appellant and John Franklin Knight, upon which the appellee could recover as the beneficiary, was either shown to have been mutually consummated or intended, wherefore the award in her favor cannot be permitted to stand. Cooley's Briefs on Insurance, vol. 1, p. 113 (6), and cited cases; Cooley's Briefs on Insurance, vol. 7, p. 6461; Chance v. Simpkins (1917) 146 Ga. 519, 91 S. E. 773; Beaty v. Southland Life Ins. Co. (Tex. Civ. App.) 28 S.W.(2d) 898; Fidelity & Casualty Co. of New York v. Curtis Brown Co., 105 Okl. 136,

232 P. 99, 101, May 27, 1924, rehearing denied December 23, 1924; Cooley's Briefs on Insurance (2d Ed.) vol. 7, pp. 6438, 6441, 6442.

Limiting this holding to the one conclusion that, for the reasons given, the appellee failed to show herself entitled to recover on the policy declared upon, the trial court's judgment has been reversed, and it has been here decreed that the appellee take nothing by this suit.

Reversed and rendered.