Clarence E. WARNER, Appellee,

v.

CONTINENTAL CASUALTY COMPANY, a corporation, Appellant.

No. 47622.

Court of Appeals of Oklahoma, Division No. 1.

April 1, 1975.

As Corrected April 2, 1975.

Released for Publication by Order of Court of Appeals April 24, 1975.

Green & James by Clarence P. Green, Oklahoma City, for appellee.

Abernathy & Ingram by David Ingram, Shawnee, for appellant.

BOX, Judge.

An appeal by Continental Casualty Company, defendant below, from a decision of the District Court of Canadian County, entering judgment in favor of Clarence E. Warner, appellee and plaintiff below.

Warner, who was then Chairman of the State Republican Committee, brought an action against Continental Casualty Company, seeking reformation of an insurance policy issued to him by Continental. The controversy arose out of the following events:

The State Republican Committee had been dissatisfied with its existing group major medical policy. In an effort to obtain a more favorable premium rate, Warner directed the Committee's finance secretary to contact Al Snipes, president of an independent fire and casualty insurance agency, with reference to obtaining a similar group health plan from some other insurer.

Snipe was well acquainted with most of the employees of the Committee and had handled the insurance needs of the Committee in numerous other situations. Snipes agreed to help the Committee secure such a policy and obtained a copy of the existing group insurance policy in order to make a comparison with other insurance plans.

Although he was a licensed agent for Continental, Snipes was not familiar with the group major medical plan it offered. He consulted Mr. Gerald Snow, a Continental field representative, and informed him that the Committee was seeking another group insurance plan. Snow had contacted Snipes on numerous occasions in an effort to solicit business for Continental. As a field representative, Snow apparently had no authority to take applications for insurance directly from customers but was limited solely to encouraging agents to sell Continental insurance.

Snipes could not recall whether he had actually informed Snow that the Committee was seeking to obtain major medical coverage but he apparently did outline the kind of group coverage the Committee then had. He gave Snow the necessary data concerning the number of employees; their age, sex and names and also told him that the Committee was interested in increasing its hospital "room benefits" and wanted to compare rates in order to determine if changing insurance would be logical.

Snow and Snipes arranged for a sales presentation to be given the employees of

the State Committee. On April 1, 1971 Snow presented the Continental group plan and Snipes presented a major medical policy provided by Aetna Insurance Company.

During the presentation both Snow and Snipes made remarks to the effect that the two policies were essentially the same. At the beginning of his presentation, Snow stated that there was no appreciable difference between the policies. After Snow and Snipes had finished their presentations, the employees discussed the two plans and put questions to both. When Snipes was asked what he thought of the Continental plan he stated that it sounded good to him; that it would be adequate; that the Aetna plan certainly did not match it as far as premiums were concerned; and that the Aetna policy (which was clearly a major medical plan) and the Continental policy were essentially the same.

The evidence clearly indicates that the Committee employees, including Warner, relied upon the representations of Snow and Snipes in selecting the Continental policy over the Aetna policy, and believed that they had chosen a major medical plan similar to the Aetna policy presented by Snipes. All of the employees signed applications for a group policy without knowing or being informed by either Snow or Snipes that they were in fact making application for a group hospital plan rather than a group major medical plan.

Warner never discovered that the Continental policy did not include major medical coverage until nearly a year later when he sustained serious injuries from an automobile accident. Warner presented numerous hospital and medical bills to Snipes, who helped him tender his claim to Continental. Snipes visited Warner on one occasion and reaffirmed his belief that the policy contained major medical coverage. After Continental informed Warner that his policy did not provide major medical coverage, Snipes wrote a letter to the Continental office stating that at the sales presentation both he and the employees were of the opinion that the Continental policy covered major medical; that Snipes had no reason to doubt the policy terms as presented by Snow; and because of the misunderstanding Continental should pay Warner's claim.

Despite Snipes' efforts, Continental continued to refuse to pay Warner's claim. In response, Warner brought this suit to reform the policy to conform to the alleged understanding of the parties that the Continental policy would pay 80 percent of all medical bills, subject to certain limitations and exceptions not material to this discussion. He also sought judgment against Continental for 80 percent of his outstanding medical bills. The trial court rendered judgment in favor of Warner.

Continental asserts several grounds for setting aside the judgment for plaintiff, as follows:

(1) It argues that Snipes lacked the authority to bind Continental to the antecedent oral agreement;

(2) That the trial court erred in finding that the evidence supported the conclusion that a mutual mistake had occurred; and

(3) That Warner's failure to obtain the desired insurance coverage was due solely to his own negligence and for that reason, and for the additional reason that Warner failed to read his policy when he received it, that he is now estopped to seek reformation.

The record reveals that Snipes was licensed with the State Insurance Commission as an agent for Continental. Consequently he was an agent within the meaning of 36 O.S.1971, § 1302. Continental does not contest this fact but contends that Snipes was a "soliciting agent" rather than a "policy writing agent" and thus lacked the authority to bind it to a risk not previously approved by its underwriting division. Continental asserts that since the application approved by Continental's underwriters was an application for group hospital insurance rather than major medical

insurance, Snipes representations to Warner cannot bind it.

The evidence is less than conclusive as to Snipes exact status and the trial court made no finding of fact on this issue. Snipes himself was unsure of the extent of his authority as agent for Continental. It appears that the customary practice was that an agent's authority was restricted to the solicitation of applications and submission to the Continental underwriting department for approval or rejection.

The often quoted language of Phipps v. Union Mutual Ins. Co., 50 Okl. 135, 150 P. 1083, provides a general definition of a "soliciting agent" under Oklahoma law, as follows:

"Syllabus by the Court.

"Ordinarily a mere 'soliciting agent' for an insurance company—that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection—has no power to bind the company to a contract of insurance; nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein."

■ Despite this restrictive definition, we do not agree with Continental's suggestion that a soliciting agent cannot, through his acts and representations, bind the insurer to a risk prior to or in absence of its approval under any set of circumstances. As the Supreme Court held in Phipps v. Union Mutual Ins. Co., supra:

"Syllabus by the Court."

"Such soliciting agent, however, can bind his company, with regard to matters within the limited and restricted scope of his authority; that is to say, in matters pertaining to the taking and preparation of the applications for insurance, for submission to the company."

Under this doctrine a soliciting agent's oral representations to an applicant for insurance bound the company to insure an unborn child, Commonwealth Life Ins. Co.

v. Hutson, Okl., 271 P.2d 772; to recognize the applicant by an adopted name, North American Accident Ins. Co. v. Canady, 196 Okl. 105, 163 P.2d 221; and to continue coverage of relocated property, Globe & Rutgers Fire Ins. Co. v. Roysden, 208 Okl. 660, 258 P.2d 644. And one with implied authority to act as a soliciting agent was held to bind the insurance company to indemnify an applicant for damages incurred in an automobile accident, as a result of his securing the applicant's signature on a binder supplied him by the insurer. Houston Fire & Casualty Insurance Co. v. Jones, 315 F.2d 116 (10th Cir.).

■ It has been held that acts performed by a "soliciting agent" and knowledge received by him in the course of soliciting applications may be binding on the insurer. Atlas Life Ins. Co. v. Eastman, Okl., 320 P.2d 397; Farmers Education and Co-op Union of America v. Bell, Okl., 366 P.2d 765; Northwestern Mut. Ins. Co. of Seattle v. Richardson, Okl., 470 P.2d 330. Other jurisdictions are in accord. 44 C. J. S. Insurance § 152 states that a soliciting agent may "bind the company by acts, agreements and representations properly made in connection with the application for insurance." In 16 Appleman Insurance Law and Practice § 869, at page 213, it is noted that generally "the acts and declarations of a soliciting agent while writing an application for insurance are those of the company itself." An insurer should be bound by mistake of its "soliciting agent." American Family Mut. Ins. Co. v. Bach, Mo., 471 S.W.2d 474; 44 C.J.S. Insurance § 279. And see Seavey, Handbook of the Law of Agency § 60.

■ We think the above authority is applicable to the situation of mutual mistake, when caused largely by the mistaken representations of the "soliciting agent." The fact that the "soliciting agent" has no authority to issue the ultimate policy does not render a court of equity powerless to correct a mistake and prevent an insurer from escaping the outcome of the actions of one of its agents. Thus, reformation has been

held appropriate where the policy does not conform to the agreement of the parties even if the mistake, insofar as the insurer is concerned, was that of a mere "soliciting agent." 43 Am.Jur.2d Insurance § 359; Trible v. Tower Insurance Co., 43 Wis.2d 172, 168 N.W.2d 148 (Wis.); B. Appleman Insurance Law and Practice § 7609.

■ Warner relied, in part, upon the erroneous representations of Continental's "soliciting agent", Snipes, and Continental is accordingly bound by them.

■ Continental is also bound by the actions and erroneous representations of its Field Representative, Snow. Snow was ostensibly a company expert dispatched to aid Snipes. He was acting as an official spokesman for his company. If Snipes made any statements about the Continental policy which were incorrect, Snow was there to correct the mistake. But Snow said nothing to modify Snipes' representations, or to disabuse Warner and the other employees of the notion that they were obtaining a major medical policy. Indeed, Snow also made statements to the effect that the Continental policy contained major medical coverage.

Warner had no reason to believe that one or the other agent was mistaken as to the nature of the policy he was encouraged to make application for. Neither did he have any reason to know he was not eligible for the Continental group major medical coverage. The company expert was present to convince him of the merits of his company's policy and to ensure that Continental's "soliciting agent", Snipes, made no mistake in presenting the Continental policy. If Snow was also mistaken should the plaintiff Warner be forced to sustain the loss? We think not. Warner was entitled to rely on Snow. We therefore hold that Snow's misrepresentations and actions are binding on Continental.

■ We find no merit in Continental's contention that the evidence does not support the conclusion that a mutual mistake existed between plaintiff and defendant. Snipes at all times believed that he was soliciting an application for a group major medical policy. Snow was likewise mistaken, at least to the kind of insurance sought by the Committee. The Committee employees, relying primarily on Snipes' presentations, definitely believed they were making applications for a major medical policy. The trial court's finding was not against the clear weight of the evidence and we do not disturb it. Littlefield v. Roberts, Okl., 448 P.2d 851.

■■ We also fail to find any merit in Continental's suggestion that Warner is now estopped from reforming the policy because he neglected to read it. See Commercial Casualty Insurance Co. v. Varner, 160 Okl. 141, 16 P.2d 118; Home Insurance Co. of New York v. Sullivan Machinery Co., 10 Cir., 64 F.2d 765; Columbian National Life Insurance Co. v. Black, 10 Cir., 35 F.2d 571. Although some courts are contra, the better view, and the majority view in our opinion, is that an insured can assume, without reading his policy, that it conforms to his agreement with the soliciting agent. Accordingly, acceptance by the insured of a policy without reading it does not preclude reformation. This is so even where reformation is sought after the loss has occurred. 13 Appleman Insurance Law and Practice, § 7610; 43 Am.Jur.2d Insurance § 370; 44 C.J.S. Insurance § 277 b.

■ From a thorough review of the record we hold that the trial court did not commit error in reforming the insurance policy in controversy.

Affirmed.

ROMANG, P. J., and REYNOLDS, J., concur.