**Naomi R. WILSON, an individual, and Naomi R. Wilson as Personal Representative of the Estate of Franklin Wilson, Plaintiff–Appellant,**

v.

**MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY, Defendant–Appellee.**

No. 89–6154.

United States Court of Appeals, Tenth Circuit

Dec. 12, 1990.

William E. Woodson, William E. Woodson & Associates, Norman, Okl., for plaintiff-appellant.

Reid E. Robison (Robert W. Dace and M. Richard Mullins with him on the brief), Oklahoma City, Okl., for defendant-appellee.

Before BALDOCK, BARRETT and EBEL, Circuit Judges.

PER CURIAM.

This appeal arises from an attempt by the appellant's husband, Franklin Wilson, to purchase life insurance from the appellee, Massachusetts Indemnity and Life Insurance Company (Milico), and Mr. Wilson's subsequent death prior to the issuance of a policy. The district court granted Milico's motion for summary judgment, thereby dismissing Mrs. Wilson's claims of breach of an insurance contract and bad faith failure of Milico to pay benefits under the terms of that contract, negligent delay in accepting or declining coverage to Mr. Wilson, and negligent delay in notifying Mrs. Wilson that coverage had been denied. Because we find that parol evidence is inadmissible here to vary the terms of the written document, that Mrs. Wilson has failed to raise a genuine issue of material fact as to her husband's insurability, and that any reliance on representations by Milico's agents by Mrs. Wilson under the circumstances of this case was unwarranted, we affirm the district court.

On July 19, 1987, Mr. and Mrs. Wilson met with Darrell Cobb, an authorized agent for Milico, for the purpose of obtaining life insurance for Mr. Wilson, a diabetic. During the course of this meeting, Mr. Wilson executed an application for insurance, naming Mrs. Wilson as the beneficiary.

The application signed by Mr. Wilson contained a "Conditional Premium Receipt" which provided:

There will be no insurance coverage prior to the policy issue date unless all conditions set forth below are met. They cannot be changed by the agent signing above. If all conditions are met and your death occurs before the delivery date of the policy, then you are covered in accordance with the provisions of this receipt and any policy provisions not in conflict.

The four conditions of coverage listed in the conditional premium receipt were the following:

All information given in your application must be accurate and complete.

You must be found to be a standard risk for the Policy applied for according to our underwriting rules.

All items requested by us concerning your insurability must have been received.

At least one months premium must be paid with the application.

Milico received Mr. Wilson's application on July 24, 1987, and cashed the Wilsons' check on July 27. On August 5 or 6, 1987, Milico requested Mr. Wilson's medical records from the Veterans Administration Hospital in Oklahoma City, Oklahoma. These records were received on August 31, 1987. Based on these records, Milico determined on September 4, 1987, that Mr. Wilson was not a standard risk and declined his application for insurance, although Mrs. Wilson was not informed of this decision until October 12, 1987.

Meanwhile, on August 30, 1987, Mr. Wilson entered Norman Regional Hospital, suffering from an apparent heart attack. He died on September 8, 1987. By letter dated September 14, 1987, Milico informed Mrs. Wilson that a policy had not been issued at the time of Mr. Wilson's death and that the Underwriting Department was attempting to determine if the policy could have been issued as applied for, this despite evidence, discovered later, that a decision had been made on September 4 determining Mr. Wilson to be an unacceptable risk. A copy of the conditional receipt and a claim form were enclosed. Milico specifically refused to acknowledge any liability at the time, reserving judgment until after a "review of the claim form and other items."

By another letter also dated September 14, 1987, Milico requested that its local agent, Gary Rose, assist Mrs. Wilson in filing her claim. Mrs. Wilson maintains that Mr. Rose informed her that he didn't see any problem with the claim and that a check should be received within two weeks. Affidavit of Naomi R. Wilson, Vol. I, Doc. 19, Exhibit "A".

In early October, Mrs. Wilson purchased an automobile and paid $500.00 earnest money for the purchase of a new home. On October 12, 1987, Milico informed Mrs. Wilson that her husband's application had been declined because he had not qualified for insurance. The premium amount was refunded on October 26, 1987.

On appeal Mrs. Wilson argues that the district court erred in concluding that the parties did not enter into a contract of insurance. She also urges that it was further error for the district court to grant summary judgment in favor of Milico on her claims of negligent delay in accepting or denying coverage and negligent delay in notifying her that coverage was denied. We address these issues in turn.

*Existence of a Contract*

Mrs. Wilson maintains, and for purposes of reviewing a grant of summary judgement we must accept as true, *Ewing v. Amoco Oil Co.*, 823 F.2d 1432, 1437 (10th Cir.1987), that during the course of their meeting Mr. Cobb stated that as long as Mr. Wilson's diabetes was under control he was insurable as a "standard risk," that by signing the application and submitting the first month's premium Mr. Wilson would be covered until further notice, and that the check for the premium would not be processed until Milico had approved the application. Affidavit of Naomi R. Wilson, Vol. I, Doc. 19, Exhibit A.

Mrs. Wilson argues that by virtue of the representations made by its agent, Darrell

Cobb, Milico entered into a binding oral contract for insurance with her husband. Indeed, if the only evidence of the dealings between the parties had been Mrs. Wilson's testimony regarding the meeting, we would be hesitant to affirm a grant of summary judgment. It has long been the law of Oklahoma that an insurance agent can bind the company by an oral contract of insurance, which contract gives rise to liability even without the issuance or delivery of a policy. *Federated Mut. Implement & Hardware Ins. Co. v. Fairfax Equip. Co.*, 261 F.2d 207, 210 (10th Cir.1958) (construing Oklahoma law and citing cases).

In this case, however, we have more evidence of the terms of the parties' agreement than just the conflicting testimony of Mrs. Wilson and Mr. Cobb because here the parties reduced their agreement to writing in the form of the application for insurance signed by Mr. Wilson. Because of the existence of a written memorial of the parties' agreement, and absent fraud or mutual mistake, any evidence of prior or contemporaneous oral discussions or stipulations is inadmissible to vary or modify the terms of the writing. *United Pac. Ins. Co. v. Northwestern Nat'l Ins. Co.*, 185 F.2d 443, 446 (10th Cir.1950); *Ollie v. Rainbolt*, 669 P.2d 275, 279 (Okla.1983). Once an oral contract is reduced to writing, prior oral discussions are merged into the written agreement. *Albert & Harlow, Inc. v. Fitzgerald*, 389 P.2d 994, 996 (Okla.1964).

Oklahoma has codified the parol evidence rule at 15 O.S. § 137 (1983 & Supp. 1990) which states: "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." This rule against the admissibility of parol evidence applies to insurance contracts just as it does to contracts in general, and the only exceptions to it arise in cases of ambiguity or where one party alleges fraud or mutual mistake. *United Pac. Ins.*, 185 F.2d at 446.

There is nothing ambiguous about the insurance application at issue here.

The conditional premium receipt, a part of the application signed by Mr. Wilson and given to him upon payment of the premium, clearly states, as one of its four conditions for coverage, that the applicant must be found to be a standard risk. The receipt is also clear that the agent cannot change the conditions. Mrs. Wilson does not allege that there was any fraud involved in the transaction. She does, however, argue that the parties were mutually mistaken about the date of coverage, thus making the parol evidence rule inapplicable. We disagree.

In order to overcome a motion for summary judgment the nonmoving party, Mrs. Wilson, must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to establish the existence of a mutual mistake Mrs. Wilson must show by clear and convincing evidence that both parties to the contract were mistaken about an essential term, as a result of which the contract reflects the intention of neither party. *See Cleary Petroleum Corp. v. Harrison*, 621 P.2d 528, 533 (Okla. 1980). Where a litigant relies on mutual mistake to evade the force of the parol evidence rule, such mistake must be "pled and proven by clear, cogent and convincing evidence." *Albert & Harlow*, 389 P.2d at 996 (quoting *Lone Star Gas Co. v. Oakman*, 283 P.2d 810 (Okla.1955)); *see also Ohio Casualty Ins. Co. v. Callaway*, 134 F.2d 788, 789 (10th Cir.1943) (evidence of mutual mistake "must be shown by proof of the greatest and most satisfactory kind").

While Mrs. Wilson's affidavit regarding Mr. Cobb's statement that coverage would exist until further notice might be evidence tending to show that Mr. Cobb was mistaken as to this essential fact, Mrs. Wilson has not produced any competent evidence to show that her husband labored under the same misconception. Mr. Wilson signed the application and the receipt which clearly stated, on the signature page, that

"there will be no insurance coverage prior to the policy issue date unless all conditions set forth below are met." The next sentence stated that the conditions could not be changed by the agent. The conditions for coverage were separately set out below these statements under a centered heading in bold type. One of those conditions was that the applicant must be found to be a standard risk. While it may seem harsh under these circumstances, Oklahoma law requires that these provisions bind Mr. Wilson even if he did not read the application or actually know of its contents. *See Jordan v. Hall–Miller Drilling Co.*, 203 F.2d 443, 446 (10th Cir.1953) (construing Oklahoma law); *see also Bass Furniture & Carpet Co. v. Finley*, 129 Okla. 40, 263 P. 130, 132–33 (1927) (citing Oklahoma cases). Thus, reliance by Mr. Wilson on any statement by Mr. Cobb regarding immediate coverage, after having an opportunity to read the document which he signed, was unreasonable as a matter of law.

Mrs. Wilson looks to agency law, citing *Security Ins. Co. v. Cameron*, 85 Okla. 171, 205 P. 151 (1922), for the proposition that an insurance company cannot limit its liability for acts done by its agents by placing disclaimers in its applications or contracts. *Id.* 205 P. at 162–63. While these arguments may be relevant in another setting, where the parties have reduced their agreement to writing, any parol evidence that would tend to alter or contradict the written document is inadmissible, and arguments based on that evidence are irrelevant.

Mrs. Wilson points to two cases with fact patterns similar to hers in which orders for summary judgment in favor of an insurer were reversed on appeal. *Brand v. International Investors Ins. Co.*, 521 P.2d 423 (Okla.Ct.App.1974); *Barber v. Bankers Life & Casualty Co.*, 81 Wash.2d 140, 500 P.2d 88 (1972). In *Brand,* however, the appellate court did not consider the applicability of the parol evidence rule. *See Chalamidas v. Sierra Life Ins. Co.*, 632 F.2d 1381, 1384 n. 2 (10th Cir.1980) (when party does not object to the introduction of parol evidence, appellate court does not consider it erroneously received).

In *Barber* the applicant was given a receipt limiting the company's obligation to refunding the premium unless the application was approved and a policy was issued. Nevertheless, the court held that a material question of fact existed regarding whether the agent had promised the applicant immediate coverage, thus precluding summary judgment. *Id.* 500 P.2d at 91. We are not bound by the Washington state court, and we agree with the dissent in *Barber* that the clear and unambiguous terms of the receipt should have bound the applicant. *Id.*

Mrs. Wilson's reliance on *Warner v. Continental Casualty Co.*, 534 P.2d 695 (Okla.Ct.App.1975), is also misplaced. In *Warner* there was ample evidence that both the authorized representatives of the insureds and the agents for the insurance company were mistaken as to the type of coverage to be provided by the policy. *Id.* at 696–97.

### Negligent Delay in Accepting or Denying the Application

The district court correctly found that after August 30, 1987, the date on which Mr. Wilson was hospitalized with a heart attack, that he was uninsurable as a matter of law. Therefore, the court concluded that the only delay attributable to Milico which could possibly have caused injury to Mrs. Wilson was the period from July 24, 1987, the date on which Milico received the application, and August 5 or 6, the date on which it requested medical records from the Veterans Administration. The court found that a reasonable jury could not conclude that this delay of twelve or thirteen days, which included only nine business days, constituted negligence and so granted the defendant summary judgment on this claim.

 Ordinarily, the question of the reasonableness of a delay by an insurance company in responding to an application is one for the trier of fact. *Republic Nat'l Life Ins. Co. v. Chilcoat*, 368 P.2d 821, 824 (Okla.1961); *Pioneer Reserve Life Ins. Co. v. Dunavant*, 182 Okla. 58, 76 P.2d 1044, 1047 (1937); *Childers v. New York Life*

*Ins. Co.,* 117 Okla. 7, 245 P. 59, 60 (1925); *Columbian Nat'l Life Ins. Co. v. Lemmons,* 96 Okla. 228, 222 P. 255, 259 (1923); *Security Ins. Co.,* 205 P. at 158. Delays as brief as three to four days have been found to be unreasonable. *See Pioneer Reserve,* 76 P.2d at 1046–47 (noting with approval submission of whether the delay was reasonable to the trier of fact where agent of insurer had delayed three or four days before mailing application to company). Whether the district court was in error here as a matter of law is a question we do not reach. In any event, because of our disposition of this case, if the district court erred, such error was harmless.

■ In addition to showing delay, Mrs. Wilson, by advancing this tort claim of negligent delay in accepting or denying the application, also bears the burden of demonstrating damage before she will be allowed to recover. *See generally Rawdon v. Stanley,* 455 F.2d 482, 484 (10th Cir. 1972) (damage is a required element in a tort action). To demonstrate that the delay at issue here caused her damage, Mrs. Wilson must prove either that Milico would have accepted Mr. Wilson as a standard risk before his death if it had acted more diligently, or that he was generally insurable and could have obtained insurance elsewhere had he not thought that Milico would accept his application. Mrs. Wilson has failed to sustain this burden. As the nonmoving party to the motion for summary judgment, Mrs. Wilson must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553.

The only evidence offered by Mrs. Wilson in support of her argument that her husband was insurable is an affidavit from Thomas M. Richardson, an insurance underwriter and broker, who testified that it was his opinion that Mr. Wilson would have been able to obtain the same amount of insurance from another carrier. Vol. I, Doc. 19, Exhibit B.[1] This conclusion, however, does not take into account the short amount of time actually available to Mr. Wilson to procure insurance. Milico received Mr. Wilson's application on July 24. On August 5 or 6, Milico requested Mr. Wilson's records from the Veterans Administration Hospital. The delay between receipt of the application and the request to the VA was a period of nine business days. Seventeen business days elapsed between the time Milico requested the VA medical records and August 31, the day Milico received them. On the previous day, August 30, Mr. Wilson was admitted to the Norman Regional Hospital with a heart attack. There is no question that after his admission to the hospital on August 30, Mr. Wilson was uninsurable.

The delay caused by the VA cannot be attributed to Milico. There is no evidence in the record to suggest that the VA response would have been any faster for any other insurance company. Nor is there any evidence to suggest that any other insurance company would have approved Mr. Wilson's application without first examining the VA records. Thus, the seventeen day period involved in obtaining the VA records must be taken as a constant under the facts of this record. Any insurance company evaluating Mr. Wilson's application would have had to delay at least that long before responding. The only relevant time period with regard to Milico's delay in processing the application, therefore, is the

---

1. Neither Mrs. Wilson's affidavit testimony that at the time of his death her husband's diabetes was under control nor a medical form from Adams Clinic, Inc. indicating that Mr. Wilson was a "borderline diabetic" are sufficient evidence of his insurability. There is no evidence that either Mrs. Wilson or the unidentified technician at the clinic had any experience in the area of insurance underwriting or that they were qualified to opine on whether Mr. Wilson would have met Milico's standards as an insurable risk. In order to withstand a motion for summary judgment, Mrs. Wilson must present more than a mere scintilla of evidence on an issue as to which she would bear the burden at trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Neither of these two items of evidence, whether taken alone or together, are such that a jury could reasonably find for Mrs. Wilson on the issue of her husband's insurability. *See id.*

nine business days between the receipt of the application by Milico and Milico's request to the VA for medical records.[2]

For purposes of analysis, and resolving every inference in favor of Mrs. Wilson, even if Milico had not delayed at all and had made the request of the VA on July 24, the day it received the application, Milico would not have received the medical records until seventeen business days later, or August 17. Again assuming that, on the same day it received the medical records, Milico had been able to evaluate Mr. Wilson's application and notify him of its decision to decline coverage, Mr. Wilson would only have had nine business days in which to begin the search for insurance anew. Given the fact that the VA would use seventeen business days to respond to a request for medical records and the fact that there was no evidence that any other insurance company would insure him without those records, a reasonable jury could not conclude that Mr. Wilson could have obtained insurance from any other company, during his lifetime.

 We agree with the district court that Mrs. Wilson has failed to show damage from the delay in processing the application. In situations where the evidence is so one-sided that a reasonable jury could only come to one conclusion, the trial court is justified in refusing to submit issues of fact to a jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Summary judgment is granted where " 'there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law.' " Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510.[3]

*Negligent Delay in Notifying Mrs. Wilson of Denial of Coverage*

 We affirm the district court's finding on this claim for substantially the reasons stated by that court. Any reliance by Mrs. Wilson on representations by any of Milico's agents regarding policy coverage given the conditional premium receipt, the absence of an issued policy and the language of the September 14 letter from the company was unjustified. This conclusion also disposes of Mrs. Wilson's argument based on the principle of equitable estoppel.

The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.

---

2. The evidence is clear that Milico rejected Mr. Wilson based on his medical history as a diabetic and did not reject him because of his heart attack. Thus, the delay here did not affect Milico's judgment regarding Mr. Wilson's insurability by affording it the opportunity to take Mr. Wilson's heart attack into account in its risk analysis.

3. Mrs. Wilson's reliance on *Chilcoat*, 368 P.2d 821, to support her argument that she can pre-

vail on the damage issue is inapposite. In *Chilcoat* the only discussion of an issue regarding the decedent's insurability per se concerned the admissibility of certain hearsay evidence. *Id.* at 826. Because the plaintiff in *Chilcoat* prevailed, her evidence regarding the decedent's insurability was apparently believed by the jury. Here, there is no competent evidence regarding Mr. Wilson's insurability which even creates a jury question.