196 So. 165

**HOSPITAL SERVICE CORPORATION v. CLIFTON.**

**4 Div. 544.**

Court of Appeals of Alabama.

May 14, 1940.

McDowell & McDowell, of Eufaula, for appellant.

Comer & Grubb and Chauncey Sparks, all of Eufaula, for appellee.

BRICKEN, Presiding Judge.

Suit was brought by the appellee against appellant company, upon a certain hospitalization certificate issued by appellant to appellee on November 24, 1937.

In the lower court the cause was tried before a jury resulting in a verdict for plaintiff for the sum of $157.50, and upon said verdict the judgment of the circuit court was duly pronounced and entered.

Within the time allowed by law, the defendant filed its motion for a new trial, which was overruled, and this appeal is from the final judgment, supra, and also from the action of the court in overruling defendant's motion for a new trial.

Upon the trial the plaintiff testified as a witness and his testimony tends to show that prior to November 24, 1937, a Mr. W. A. Horn, an agent or representative of the defendant corporation, went before the city council of the City of Eufaula, Alabama, and solicited a group application for hospitalization services for all of the city employees of said city; and at this time plaintiff was in the employment of said city as the fire chief thereof; that said city council subsequently gave said W. A. Horn, defendant's said agent, permission and authority to take applications from said city employees for said hospitalization service upon the understanding and agreement that the premiums to be paid for said service would be deducted by the city clerk of said city out of the monthly compensation paid by said city to said various employees of said city to be remitted by said city clerk to said Hospital Service Corporation of Alabama, at Birmingham, Alabama, in payment of said premiums; that within a short time thereafter the said W. A. Horn, as agent of the defendant corporation, called upon plaintiff and requested him to sign, in blank, an application to said Hospital Service Corporation of Alabama, for said hospitalization service; that under said blank application a city

employee of said city could apply for hospitalization service for himself and the members of his immediate family by listing on the application blank the name, or names, of such member, or members, of the applicants family as he desired to be protected by the payment of his premium for such service; that said application blank showed the amount of premium to be paid to said corporation for hospitalization service for a husband and wife; that when the defendant's said agent called upon plaintiff he requested plaintiff to sign said application in blank, to be later filled in by said agent in the event a sufficient number of said city employees necessary to form the group made application for this hospitalization service; that plaintiff signed said application in blank upon the express understanding and agreement with said agent that plaintiff was applying for hospitalization service for himself and wife, Mrs. H. L. Clifton, one and the same person as Mrs. Robbie C. Clifton, and that said agent was to fill in said application blank so as to cause the same to show that the hospitalization service applied for and to be rendered by defendant corporation would be for plaintiff and his said wife; that some time after he had signed said application blank and after it had been carried away by defendant's said agent plaintiff received a hospitalization service certificate and hospital admittance card from the defendant corporation and immediately noticed that the name of plaintiff's wife did not appear on either the certificate or hospital admittance card and that later on plaintiff wrote his wife's name on said admittance card; that this was done on the day said certificate and said card were received by plaintiff and that on the night of that day he saw Mr. Horn, the defendant's said agent, and told him that the name of plaintiff's wife did not appear either upon the hospitalization certificate or on the admittance card received by plaintiff from defendant; that this was on the night of December 7, 1937, the first meeting night of the city council in the month of December, and that said agent then asked plaintiff where said certificate and admittance card were and that plaintiff replied that he had them with him and that he handed the card to said agent, who said: "I don't understand why, unless they made a mistake and left it off;" that plaintiff then asked said agent what he was going to do about

it and that the agent replied—"I'll send it back to Birmingham and get them to straighten it out and put her name on it;" that some four or five days after this plaintiff again met the said agent, who told plaintiff that he had heard from Birmingham and that the Hospital Service Corporation of Alabama said that Mrs. Clifton's names were not on the card, or certificate, which had been issued to plaintiff and that she could not be included in the policy; that plaintiff then said to said agent: "Now, Mr. Horn, I had a perfect understanding that she was included in my policy. If that's the way the thing has worked out you just write Birmingham and tell them I said cancel my policy, that I didn't want it if my wife is not included in the policy; I don't want it, they can cancel it;" that thereupon said agent requested plaintiff not to cancel the policy but to give the agent a chance to see what he could do about it; that plaintiff consented to do this but told said agent that if said Hospital Service Corporation refused to include plaintiff's wife in said policy that then said agent should cancel the policy while he was up there; that afterwards and about December 15th, or 16th, plaintiff met said agent at the Post Office in Eufaula and that said agent then and there said to plaintiff: "Well, I've been to Birmingham and took up your matter with them and they told me to come back here and tell you by special permission they had included your wife in your policy and they (that) you would have to pay her premium quarterly;" that plaintiff accepted and agreed to this proposal and requested said agent to come by the store and that plaintiff would give him a check for said quarterly premium and that said agent could send the check and papers back to Birmingham; that the agent then told plaintiff that he would come by and get those things and send them along with the check; that subsequently, on or about January 10th, said agent came in and said —"Well, I've come after that little card and thing now;" that said agent laid another one of the little cards upon the counter for plaintiff to sign and that plaintiff asked him—"Do I have to sign another one? I've signed one;" that the agent replied—"Yes, you have to sign one for her;" that plaintiff signed his name on the card for his wife and also signed and delivered to said agent a check for

$2.60, the quarterly premium, and covering the same date plaintiff's policy covered; that he wrote on the left hand corner of the check the date the quarterly premium was to cover—"11/24/37 to 2/24/38" which dates covered the date plaintiff's policy was issued and the next succeeding date when another quarterly premium would be payable for plaintiff's wife; that the defendant received, endorsed and cashed said check; that plaintiff's wife suddenly became ill on January 17th and that plaintiff carried her to the Salter Hospital in Eufaula, Alabama, and had her admitted for hospitalization service upon the statement of plaintiff to Dr. Salter, proprietor of said hospital, which was one of the defendant's participating hospitals, that plaintiff understood that plaintiff's wife was entitled to hospitalization service in said hospital under plaintiff's contract and that the said Salter Hospital promptly sent notice to the defendant of the admittance of plaintiff's wife into said hospital; that on the 21st day of January Dr. Salter called plaintiff and said—"I thought you told me you had this hospital insurance with the Hospital Corporation?" That plaintiff replied —"I have got it" and that Dr. Salter then said—"I got a letter from them when I sent this in, that you didn't have it," and that plaintiff then said to Dr. Salter—"I have got it, according to their agent; he instructed me I did have it by special permission from their Company." (The check which plaintiff gave to defendant's agent for transmission to defendant in Birmingham, and which covered the quarterly premium for plaintiff's wife, shows from the endorsement thereon that it was paid in Birmingham on Jan. 20, 1938, and in Eufaula on Jan. 22, 1938, while the application which plaintiff signed for his wife under instructions from defendant's agent on January 10, 1938, and which was introduced in evidence by defendant bears the endorsement—"(Rejected 1–24–38)" and so it is made to appear that defendant cashed plaintiff's check for his wife's quarterly premium after defendant received notice that Mrs. Clifton was in the hospital and that plaintiff claimed his wife was entitled to hospitalization service under plaintiff's contract with defendant.)

The plaintiff further testified that his wife was in the hospital 27 days and that defendant's liability under the contract was limited to 21 days; that plaintiff's

total bill for the hospitalization of his wife was $267, made up of the various items shown by the Salter Hospital bill against plaintiff, and which was introduced in evidence; that Dr. Salter sent a bill to the defendant for the amount claimed to be due from the defendant and that the defendant refused to pay it.

The application blank that plaintiff signed in blank shows on its face that by properly being filled in it could be an application for husband and wife at a rate considerably in excess of the individual rate for the husband alone, specifically the rate for husband and wife is double that of an individual.

The plaintiff also introduced Dr. Paul P. Salter as a witness, who testified that he was the owner and proprietor of the Salter Hospital in Eufaula, Alabama, and that it was a contributing or participating hospital with the Hospital Service Corporation of Alabama. The doctor's testimony corroborated that of the plaintiff with respect to the time plaintiff's wife was admitted to the hospital, and the conditions under which she was so admitted; that at the time of the admission of Mrs. Clifton to the hospital Mr. Clifton told him that it was his understanding that his wife was included in his hospitalization certificate, although her name was not on it; that he sent a notice to the Hospital Service Corporation of Alabama, 403 Chamber of Commerce Bldg., Birmingham, Ala., that Mrs. H. L. Clifton had been admitted to the hospital on 1/17/39 and that the subscriber's identification card, or receipt, Group No. 830 was inclosed with the notice, which notice was introduced in evidence by plaintiff; that the hospital bill for Mrs. Clifton, amounting to $267, and which was admitted in evidence was correct, and that if liable, the defendant under its contract with witness was chargeable with 21 days hospitalization at the rate of $6 per day and such other charges as the defendant, under its contract, agreed to pay; that when Mrs. Clifton was admitted to the hospital Mr. Clifton, the plaintiff, told the witness that she had a contract for hospitalization with the defendant; that he had sent the defendant a bill for the hospitalization of Mrs. Clifton and that the defendant had refused to pay it; correspondence between Dr. Salter and the defendant was also introduced in evidence by the defendant.

The above and foregoing was in substance all of the testimony offered by the plaintiff.

To meet, or in answer to, plaintiff's testimony the defendant offered one, and only one, witness, Mr. Ed S. Moore, who testified that he was manager of the defendant corporation; that said corporation had issued to plaintiff a hospitalization certificate, upon which the premium was 90¢ per month, and which was billed to and paid by the city of Eufaula; that this certificate did not include hospitalization for plaintiff's wife; that he had seen the application of H. L. Clifton before; that it was sent in by Mr. Horn, who was defendant's agent, or representative, at Eufaula; that this application was sent in as the application of H. L. Clifton, alone; that the application of plaintiff was accepted by defendant on November 21, 1937, and a hospitalization certificate was issued to plaintiff and that the defendant corporation received the premium therefor.

Continuing, this witness testified: "Mrs. Clifton was not insured under this certificate, or under the certificate that was issued by our company. Under that group, or under our contract, employees of that city were entitled to or they did have the right to insure other members of their family. Under that contract, other employees of the city insured individually and members of their family. I don't remember how many under the group. Mrs. Clifton was never insured by our Company under this application."

This witness also testified that: "Mr. Horn was our representative. We call them representatives instead of agents. He was our agent. He solicited this insurance. He explained it to the policy holders. He had a right to send in applications. He had a right to collect moneys and to remit to us. He did come to see us about this Clifton matter, in Birmingham. As to the time, it was in the holidays of 1937, right after Christmas, I think. He explained this situation to us. I did not, most emphatically, tell him in that explanation, that if it meant anything to him to come back here and tell Mr. Clifton that his wife was insured. I did tell him that she would have to sign, or he would, another application to include her."

To include Mrs. Clifton in what? Why in the hospitalization certificate that the

Company had issued to her husband, or to include her in the protection thereof. All that Mr. Clifton had to do, according to this testimony, was to sign an application for his wife to include his wife in this protection.

This witness further testified that he did not tell Mr. Horn that Mr. Clifton would have to pay the quarterly premium for his wife, but that the Company did receive $2.60 (the amount of the quarterly premium) from these people; that this amount purported to cover her first quarterly premium from the time the Company accepted her until ninety days thereafter; that it had no reference to the past ninety days; that he did not remember to have seen the check when it came in; that these checks were handled by the Company's cashier and that witness did not see the figures on the check; that he told Mr. Horn that Mrs. Clifton could not be included under her husband's certificate, but that she would have to have an independent certificate; that he received notice from Dr. Salter that Mrs. Clifton was in the hospital, but that he was uncertain as to the time when the notice was received (this notice was dated 1/17/38), but that he certainly did not know that Mrs. Clifton was in the hospital when they declined her application (said application bears the endorsement— "rejected 1–24–38).

■ It is very clear to this court, from the testimony of defendant's witness, Mr. Moore, that if Mr. Horn, the defendant's agent at Eufaula, had the right to solicit the insurance in question and to explain it to the policy holder, and to collect and remit the premium therefor, and to fill out the application of plaintiff, then such agent in explaining plaintiff's certificate to him had the right to tell him, if he did so, that Mrs. Clifton was included in the certificate that the defendant had issued to said plaintiff. If Mr. Horn made that statement to plaintiff then the defendant was bound by that statement notwithstanding the endorsement on the certificate to the effect that the agent of the defendant should have no authority to make any agreement or promises not specifically set forth in the written contract. If Mr. Horn, defendant's agent, made that statement to plaintiff, and plaintiff relied thereon and signed the application as he was instructed to do and paid the quarterly premium as he was also instructed to do,

by said agent, then the defendant corporation either waived the provision of said certificate, or is estopped to set it up as a defense to this suit.

■ The vital question in this case is whether or not defendant's agent, Mr. Horn, said to plaintiff—"Well, I've been to Birmingham and took up your matter with them and they told me to come back here and tell you by special permission they had included your wife in your policy and that you would have to pay the premium quarterly." Under the testimony in this case it sufficiently appears that the agent, Mr. Horn, was acting in the scope and line of his authority when he made the statement, if he did make it. Whether or not said agent made said statement to plaintiff was, under the testimony in this case, of course a question for the jury.

Appellant has made four assignments of error upon the record. The appellee insists that these assignments of error are waived under Supreme Court Rule 10. We think assignment of error 1, which relates to the ruling of the trial court upon defendant's demurrer, is waived by appellant, and with reference to the other and remaining assignments of error, the attention of counsel for appellant is directed to the cases of Sovereign Camp, W. O. W. v. Ballard, 19 Ala.App. 411, 97 So. 895; Barfield v. Bartlett, 23 Ala. App. 9, 119 So. 696.

■ We have given the record in this case our careful and attentive consideration, and find no error therein of which appellant can justly complain. The entire issue between the parties was fairly and ably presented to the jury in the general oral charge of the trial court. The jury were the sole arbiters of the facts in the case and they returned a verdict for the plaintiff. With this verdict the trial court, who saw and observed the witnesses as they testified, was content, or found no fault. The trial court refused to set aside the verdict of the jury and the judgment of the court upon the motion for a new trial, and this court is unwilling to pronounce that judgment erroneous.

The judgment of the trial court from which this appeal was taken will stand affirmed.

Affirmed.