NORTH AMERICAN ACCIDENT INS. CO. v. CANADY, Adm'r.

No. 31923. Nov. 6, 1945.

*163 P. 2d 221.*

Keaton, Wells & Johnston, of Oklahoma City, for plaintiff in error.

R. O. Swimmer and Charles D. Scales, both of Oklahoma City, for defendant in error.

PER CURIAM. This is an action brought in the common pleas court of Oklahoma county by H. H. Canady, administrator of the estate of W. E. Canady, sometimes known as A. S. Canady, deceased, against the North American Protective Alliance and the North American Accident Insurance Company, to recover on a life insurance policy. Both companies defended on the ground that the life of A. S. and not W. E. Canady was insured and that material, false, and fraudulent representations were made in the application for insurance for the purpose of obtaining the policy.

The trial was to the court and resulted in a judgment in favor of plaintiff against the North American Accident Insurance Company and in favor of defendant North American Protective Alliance.

Defendant North American Accident Insurance Company has appealed and relies for reversal on the ground that the judgment is not supported by the evidence and is contrary to law.

In the further discussion of the case we shall refer to the North American Protective Alliance as N. A. P. and the North American Accident Insurance Company as the Accident Company.

The evidence discloses substantially the following state of facts: There were two policies issued, one by the N. A. P. and one by the Accident Company. These companies appear to be separate entities and both maintain their principal place of business in Oklahoma City. The N. A. P. was engaged in selling what it terms "Select Risk Automobile Policy 7-Way Protection". The Accident Company sells what it terms "Personal Travel Accident Coverage". The application for insurance was taken by H. T. Miller, soliciting agent for the companies. He testified that he solicited Mr. W. E. Canady for the insurance. The application was made by W. E. Canady in the name of A. S. Canady and that the name of A. S. Canady was signed to the application by W. E. Canady; that W. E. Canady informed him at the time he solicited the application that he was at that time engaged in the grocery business in Oklahoma City; that he had adopted the name of A. S. Canady in conducting that business; that the automobile intended to be covered by the policy was purchased and owned by him but was registered in the name A. S. Canady; that upon such information he directed and advised W. E. Canady to apply for his insurance in the name A. S. Canady, the name he had adopted in the transaction of his business; that he prepared the application in the name A. S. Canady and that W. E. Canady then signed the name A. S. Canady thereto. In the application it is stated that applicant is 68 years of age, engaged in the grocery business and resides at 4001 W. 10th St., Oklahoma City. Upon this application the two policies above mentioned were issued. The policy issued by the N. A. P. was issued to A. S. Canady, Oklahoma City, Okla., and covered damages occasioned by the wrecking or

disablement of a 1940 Ford Passenger Car, type body Tudor, Motor No. 18-5429226. Paragraph D of the policy covers loss of life in the sum of $1,000 when occasioned by the wrecking or disablement of a private passenger automobile. The policy further provides:

"The Sections under paragraph D of this policy are covered under a separate policy of insurance with a Stock Insurance Company issued by a licensed agent for the Alliance in conjunction with this policy and is subject to all the provisions, limitations and conditions of that policy as though attached hereto and made a part hereof."

This policy was signed by J. Paul Tedford, president, and countersigned by G. B. Tedford, authorized agent. The evidence discloses J. Paul Tedford was president of the N. A. P. and also issuing agent of the Accident Company. Upon receipt of the application and before issuing the above mentioned policy, J. Paul Tedford, as president of the N. A. P., made application, based on the original application to the Accident Company, for an insurance policy covering the life of A. S. Canady. Such policy was then issued and countersigned by J. Paul Tedford as issuing agent. The policy insured A. S. Canady of Oklahoma City in the sum of $1,000 for loss of life occasioned by the wrecking or disablement of a private automobile. Both policies were issued on the 12th day of August, 1941. The policies were delivered by Mr. Miller, soliciting agent, to W. E. Canady, who took and kept possession of the policies and paid the premiums.

On the 8th day of September, 1941, W. E. Canady met his death in an automobile wreck while driving the car mentioned and covered under the policy issued by the N. A. P.

H. H. Canady was then appointed administrator of the estate of W. E. Canady, sometimes known as A. S. Canady, deceased, and as such administrator made claim upon both companies for payment of the policy. Liability was denied on the policy and this suit followed.

It is contended by appellant that it is not liable on the policy for the reason that it insured the life of A. S. Canady and not W. E. Canady; that the representative of W. E. Canady, deceased, cannot recover on a policy issued to and covering the life of A. S. Canady. This is, of course, true as an abstract proposition. The question here presented is, however, not quite that simple. The evidence shows beyond dispute that W. E. Canady adopted the name of A. S. Canady in the transaction of his business. He adopted that name in applying for the insurance under the advice and suggestion of Mr. Miller, the agent who solicited the insurance. It is further shown by the evidence that W. E. Canady was at that time engaged in the grocery business in Oklahoma City, as stated by him in the application for insurance. It is further shown that A. S. Canady is the brother of W. E. Canady, is a carpenter by trade and resides in Tulsa, Okla. The evidence is also conclusive that the policies when issued were delivered by Mr. Miller to W. E. Canady and the premiums thereon were paid by him. The evidence clearly discloses that W. E. Canady was the person intended to be insured and was in fact the person who was insured. The mere fact that, under the circumstances above detailed, he made application for the policy in the name A. S. Canady, the name adopted by him in the transaction of his business, does not render the policy void. In vol. 29 Am. Jur. p. 216, § 205, it is said:

"It is said that in view of the common-law principle that the office and purpose of a name is only that of identification, if it is clear that an insurance company is not misled as to the identity of the applicant, there seems to be no reason why it should be allowed to avoid the risk on such an account. Accordingly, an insurance policy may be issued to one in a name adopted by him."

In the case of Roberts v. Mosier et al., 35 Okla. 691, 132 P. 678, we said:

"A contract or obligation may be entered into by a person by any name

he may choose to assume. The law only looks to the identity of the individual, and when that is clearly established the act, when free from fraud, will be binding."

In that case it appears that one Jacob Mosier adopted the name of Fred Mosier in the transaction of his business. It is there held that the contracts made by Fred Mosier, his real name being Jacob Mosier, were as valid and binding and could be enforced by him to the same extent as though the contracts had been made in his real name, Jacob Mosier.

In the case of Pease v. Pease, 35 Conn. 131, the following rule is announced:

"A party can adopt a name, and will be holden by contracts executed in such name, and it makes no difference that the name so assumed is not an artificial one but the proper name of a living person."

Under these authorities the mere fact that W. E. Canady when applying for the insurance used his adopted or business name, A. S. Canady, rather than his real name does not necessarily render the policy void.

Appellant, however, contends that it had no knowledge that W. E. Canady was the person intended to be insured; that there was nothing contained in the application which conveyed to it such information or knowledge and that in the absence of such knowledge it cannot be held liable on the policy. We do not agree. We think the knowledge obtained by Mr. Miller, the soliciting agent, while soliciting the insurance, constitutes knowledge to appellant. In the case of Phipps v. Union Mut. Ins. Co., 50 Okla. 135, 150 P. 1083, we held:

"Ordinarily a mere 'soliciting agent' for an insurance company-that is, one whose power is confined to taking applications for insurance, which, when taken, are to be forwarded to the company for its approval or rejection-has no power to bind the company to a contract of insurance; nor has he, after the policy is issued, any authority to waive any of the terms or provisions therein.

"Such soliciting agent, however, can bind his company with regard to matters within the limited and restricted scope of his authority; that is to say, in matters pertaining to the taking and preparation of the applications for insurance, for submission to the company."

See, also, Rochester Am. Ins. Co. v. Thomas, 173 Okla. 394, 54 P. 2d 151; Security Ins. Co. v. Cameron, 85 Okla. 171, 205 P. 151. In vol. 29 Am. Jur. p. 627, sec. 823, the author, after stating that a soliciting agent of an insurance company has no authority to enter into contracts of insurance on behalf of his company and cannot bind his company by a waiver after the execution of the policy, further states:

"On the other hand, an insurer's agent authorized to solicit and receive applications for insurance is its agent to receive disclosures which supplement the application and which vitally affect the validity of the insurance if not disclosed, where a statute provides that any person who shall solicit and procure an application for insurance shall, in all matters relating to such application, be regarded as the agent of the insurer, and not as the agent of the insured."

Our statute, 36 O. S. 1941 § 197, makes the soliciting agent of an insurance company the agent of the insurer in all matters relating to such application.

In the case of Hospital Service Corporation v. Clifton, 29 Ala. A. 356, 196 So. 165, it is said:

"An agent who had right to solicit hospitalization insurance, to explain it to policyholder, to collect and remit the premium therefor, and to fill out application of policyholder, had right to to tell policyholder that policyholder's wife was included in certificate that had been issued, and insurer was bound by agent's statement on which policyholder relied in signing a second application and in paying a quarterly premium and insurer was barred by 'waiver' and 'estoppel' from setting up as a defense indorsement on certificate that agent had no authority to make any agreement not specifically set forth in written contract."

The court in that case further said:

"It is very clear to this court, from the testimony of defendant's witness, Mr. Moore, that if Mr. Horn, the defendant's agent at Eufaula, had the right to solicit the insurance in question and to explain it to the policy holder, and to collect and remit the premium therefor, and to fill out the application of plaintiff, then such agent in explaining plaintiff's certificate to him had the right to tell him, if he did so, that Mrs. Clifton was included in the certificate that the defendant had issued to said plaintiff. If Mr. Horn made that statement to plaintiff then the defendant was bound by that statement notwithstanding the endorsement on the certificate to the effect that the agent of the defendant should have no authority to make any agreement or promises not specifically set forth in the written contract. If Mr. Horn, defendant's agent, made that statement to plaintiff, and plaintiff relied thereon and signed the application as he was instructed to do and paid the quarterly premium as he was also instructed to do by said agent, then the defendant corporation either waived the provision of said certificate, or is estopped to set it up as a defense to this suit."

In the case of Byrne v. Prudential Ins. Co. of America (Mo. App.) 79 S. W. 2d 789, it is stated:

"Soliciting agent of insurer, even though he is without power to issue policies, is insurer's agent in taking applications, with full power and authority as to such applications, and acts performed and knowledge received and acted upon by him in connection with applications are binding on insurer, in absence of fraud or collusion between agent and applicants."

In that case it appears that one Henry Schockley had acquired a policy of insurance. Some time after the issuance of this policy the soliciting agent of the insurance company called upon Mr. Schockley for the purpose of obtaining an additional policy providing for a larger coverage. Mr. Schockley at that time was away from home. The soliciting agent contacted his sister, Mrs. Byrne, and explained his mission to her. He thereupon induced Mrs. Byrne to make application for insurance for Mr. Schockley and sign his name to the application. The application and the policy provided that the policy should be void if the application was not signed by the applicant. Mr. Schockley thereafter died and Mrs. Byrne, as his administratrix, brought an action to recover on the policy. The insurance company defended on the ground the policy was void for the reason that Mr. Schockley did not sign the application. The court denied this contention and in so doing stated that the agent who had the authority to solicit the insurance advised and directed Mrs. Byrne to make application for the policy and sign his name thereto; that such acts of the soliciting agent were binding on the company, and since the policy was issued with knowledge on the part of the soliciting agent that the application was signed by Mrs. Byrne and not by Mr. Schockley, it was estopped from asserting the invalidity of the policy. These authorities sustain the theory that the knowledge of Mr. Miller, soliciting agent, that W. E. Canady was the real person intended to be insured constituted knowledge to the insurance company issuing the policy.

Appellant further contends that the policy is void by reason of fraud and collusion entered into between Mr. Canady and Miller for the purpose of concealing from it the identity of the person intended to be insured. The evidence wholly fails to sustain such contention. There was no fraud practiced upon appellant by Mr. Canady in procuring the insurance. He disclosed all the facts and circumstances to Mr. Miller, the soliciting agent. The application for insurance was executed as directed by him. Mr. Canady acted in perfect good faith. It is clear that he and the agent both believed that since in conducting his business, W. E. Canady adopted and used the name of A. S. Canady, the application should be made and executed in that name. There was no fraud connected with the transaction.

It is also contended by appellant that it is not bound by the acts of Mr. Miller for the reason that he was not its agent and had no authority to represent it. Mr. Tedford, policy issuing agent of appellant, so testified. He testified that Mr. Miller had authority to solicit insurance for the N.A.P., but that he had no authority to solicit insurance for and on behalf of the Accident Company. Mr. Miller, however, testified to the contrary. He testified that he represented both companies in soliciting the insurance and that the Accident Company paid him a commission for procuring the application here involved. Morever, the application taken by him was the only application executed by insured. The policy here involved was written on this application. This is true under appellant's own theory of the defense. Its defense is in part based upon alleged false and fraudulent representations made in the application for the purpose of procuring the policy. The contention that Mr. Miller was not its agent in taking the application is not supported by the evidence.

Counsel argue that in the event A. S. Canady, brother of W. E. Canady, had met his death resulting from accident while driving the car covered by the policy, appellant would have been held liable on the policy. This statement will not bear analysis. A. S. Canady, brother of W. E. Canady, had no contract of insurance with the appellant. He did not sign the application, did not pay the premium, nor was any policy of insurance ever delivered to him. He was not engaged in the grocery business, did not reside in Oklahoma City as stated in the application. In short he was not the person insured. If therefore he had met his death resulting from accident while driving the car, his representatives could not have recovered on the policy.

The trial court found that W. E. Canady was also at times known as A. S. Canady and that W. E. Canady was the person insured and rendered judgment in favor of plaintiff. We cannot say that such finding and judgment is not supported by the evidence. Judgment affirmed.

GIBSON, C. J., HURST, V. C. J., and RILEY, OSBORN, BAYLESS, and DAVISON, JJ., concur.