HANDLER et al. v. THOMPSON.

No. 32745. July 1, 1947.

*182 P. 2d 756.*

E. F. Maley, of Okmulgee, for plaintiffs in error.

Roy A. Hockensmith, of Okmulgee, for defendant in error.

CORN, J. This is an appeal by defendants from a judgment in an action for damages for conversion.

Plaintiff rented to defendants, under a written contract, 2,344 feet of 6⅝ inch casing for their use in drilling for oil and gas. The contract, after the necessary recitations concerning plaintiff's ownership of the casing and defendants' need therefor, contained the following provision (paragraph 5):

"In case second parties obtain oil or gas in paying quantities, they agree to pay to first party the sum of 75c per foot for all of such 6⅝ inch pipe as they retain in said well, but in case of a dry hole, or if for any reason second parties pull said string of pipe, they are

to deliver back all such pipe to first party at his factory yard in Okmulgee, Oklahoma, at their own expense and cost and without cost to the first party; and in case second parties are only able to make a partial re-delivery of such string of pipe, they are to pay to first party the sum of 75c per foot on all such pipe as they do not deliver back."

The contract then provided that as consideration for furnishing the casing defendants had sold and assigned certain oil and gas leases to plaintiff.

August 23, 1945, plaintiff filed this action, stating that the well resulted in a dry hole and that defendants had done no drilling for more than a year; that he had demanded return of his casing, and upon one occasion defendant Handler had secured a 60-day extension, but upon expiration of this extension defendants still refused to return the casing, the fair, cash value thereof being 90c per foot, or $2,109.60.

By answer defendants admitted the contract and that plaintiff had furnished the casing thereunder; but alleged that, in the event the casing was not returned to plaintiff, defendants' only obligation was to pay 75c per foot for the casing, and that on July 28, 1945, they had mailed plaintiff cashier's checks totaling $1,758 in settlement of all liability. Defendants further alleged that the well was neither plugged nor abandoned, but that the casing was still in the well, which was in the process of being drilled to a lower sand.

Plaintiff's reply set forth his refusal to accept defendants' proffered payment of 75c per foot in settlement of the contract; that he had tendered back the checks; that defendants had been given an opportunity to replace the casing with other casing but had failed to do so, and also refused to return the casing, or to pay plaintiff the fair cash market value instead.

A jury was waived and the cause tried to the court. Plaintiff's evidence showed the well was drilled to at least 3,655 feet, considerably deeper than any known production within 20 miles. Plaintiff testified that in March, 1935, defendant Handler told him the well was dry and plaintiff gave them 60 days' extension so defendants might try to refinance the well, but nothing further was done and the hole was standing full of water.

Defendants' evidence was that the well had not been plugged, and the casing was still in the hole; that defendants were trying to raise money to drill deeper and the equipment was still on the well, although no drilling had been done for over a year; that plaintiff had written defendants he needed the casing and either to return it or pay plaintiff the sum of 75c per foot according to the terms of the agreement. Said letter being as follows:

"In October 1942 I furnished you with 2400' (feet) of 24# 6⅝" casing used in your well in Section 3-12N-15E.

"According to your agreement this pipe was to be returned, or you were to pay me 75c per foot for same.

"I am in need of this casing now, and if you cannot return it I would like for you to pay me for same as per your agreement. Please let me hear from me at once."

Defendant Handler denied securing the 60-day extension, but testified he told plaintiff he was going east to seek financial aid and expected to deepen the well and that they (defendants) would abide by the contract, and that thereafter they had paid plaintiff for the casing at the agreed price.

After hearing the evidence the trial court determined that, under the terms of the contract, defendants owed the duty of diligently drilling the well to completion, and that they had misconstrued the contract when they elected to keep the casing and pay 75c per foot. The court further construed the contract as providing that in case of a dry hole defendants were to pull and return the casing to plaintiff and, in the event they failed to recover all the casing, they were bound to pay for the unrecovered portion at 75c per foot.

The court further found from the evidence that defendants failed to drill a producing well, that they shut down and had failed to continue drilling; that the well was below any known producing sand and that defendants had abandoned the well and had failed to comply with the contract by pulling and returning the casing to plaintiff; that defendants had converted the casing to their own use and should pay the market value, which was found to be 90c per foot.

The trial court then determined the issues generally in favor of plaintiff and rendered judgment for $2,109.60.

Defendants contend this contract provided the extent of plaintiff's compensation, in the event the casing was not returned, under the clause which stated defendants were to pay 75c per foot for all casing not delivered back.

Examination of the contract heretofore quoted reflects that the parties agreed as follows: (1) If oil was found in paying quantities defendants were to pay 75c per foot for casing retained in the well; (2) in case of a dry hole, or if the casing was pulled for any other reason, the pipe was to be delivered back to plaintiff; (3) in case defendants could make only partial redelivery they were to pay 75c per foot for the part not returned.

Under the terms of the contract defendants had no right to declare an election and pay plaintiff for the casing. In the event they were unable to recover a part of the casing they could discharge their obligation for the undelivered portion by paying at the rate of 75c per foot.

Defendants' next contention is that the contract provided the price of all casing not returned was 75c per foot, and therefore the trial court erred in admitting testimony as to the fair market value of this pipe, contrary to the provisions of the contract. As we have construed the contract differently, this contention is without substantial merit.

Defendants further urge that under the provisions of 15 O. S. 1941 §174, time is never of the essence of a contract unless by the terms so provided. This is based upon the trial court's alleged error in finding that defendants failed to diligently complete the well, whereas defendants insist the contract specified no time for performance, and it was shown they had not abandoned the well, but intended to drill further.

However, the preceding section of our statute, 15 O. S. 1941 §173, in part, provides:

"If no time is specified for the performance of an act required to be performed, a reasonable time is allowed . . ."

The question of what constitutes a reasonable time is ordinarily a question of fact for a jury. Newman v. Roach, 140 Okla. 210, 282 P. 287.

In view of the evidence showing that defendants had not done anything on the well for more than a year, that the well already had been drilled below any known producing depth in that vicinity, and at the time of the trial was standing abandoned and full of water, we hold the trial court did not err in finding defendants had abandoned the well.

In a law action, where a jury is waived and the cause tried to the court, the judgment rendered is given the same effect as the verdict of a properly instructed jury, and where reasonably supported by competent evidence will not be reversed on appeal. Camp v. Black Gold Pet. Co., 195 Okla. 30, 154 P. 2d 769; North American Accident Ins. Co. v. Canady, Adm'r, 196 Okla. 105, 163 P. 2d 221.

Judgment affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, BAYLESS, WELCH, and GIBSON, JJ., concur. ARNOLD, J., dissents.